UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

| | |
|---|---|
| KEVIN GUEVARA, individually and on behalf of all others similarly situated, | Case No.   7:22-cv-4119 |
| Plaintiff, | CLASS ACTION COMPLAINT |
| v. | JURY TRIAL DEMANDED |
| E-FILLIATE, INC., | |
| Defendant. | |

------------------------------------------------------------x

Plaintiff Kevin Guevara ("Plaintiff") brings this action on behalf of himself, and all others similarly situated against Defendant E-Filliate, Inc. ("Defendant") for the manufacture, distribution, and sale of the DeWALT Jobsite Pro Wireless Earphones (the "Product"). Plaintiff makes the following allegations pursuant to the investigation of his counsel and based upon information and belief, except as to the allegations specifically pertaining to himself, which are based on personal knowledge.

## NATURE OF ACTION

1. This is a class action lawsuit against Defendant for the manufacture, distribution, and sale of the Jobsite Pro Wireless Earphones sold under the DeWALT brand, all of which suffer from an identical defect in design. Specifically, the Products are prone to overheating during charging or use and create the potential for a burn or fire hazard. Earphones that pose such a hazard are unreasonably dangerous compared to the utility of the Product. Moreover, such a defect can render the Product unusable during periods of overheating. As such, this defect rendered the Product unsuitable for its principal and intended purpose. Further, had Plaintiff been aware of this serious defect, he would not have purchased the Product, or would have paid significantly less for it.

1

2.      On December 1, 2021, the United States Consumer Product Safety Commission ("CPSC") issued a recall notice of approximately 301,800 units of the Products due to the prevalent nature of the defect (the "Product Recall"). However, the Product Recall failed to cure the defect because it failed to provide consumers with the option for a cash refund, and instead only offered a product replacement. The Product Recall was further inadequate because it failed to provide direct notice to consumers. As such, the Product Recall, by its design, is not likely to reach consumers entitled to relief. Finally, the Product Recall does not offer statutory damages, which Plaintiff and Class Members are entitled to, as set forth herein.

3.      Plaintiff brings his claims against Defendant individually and on behalf of a class of all other similarly situated purchasers of the Product for (i) violation of New York General Business Law § 349; (ii) violation of New York General Business Law § 350; (iii) breach of implied warranty; (iv) violation of the Magnuson-Moss Warranty Act; and (v) unjust enrichment.

**PARTIES**

4.      Plaintiff Kevin Guevara is, and at all times relevant to this action has been, a resident of Pomona, New York and a domiciliary of New York. In or about April 2021, Mr. Guevara purchased a pair of the DeWALT Jobsite Pro Wireless Earphones from a Lowe's hardware store located in Nanuet, New York. Mr. Guevara purchased the Product because he believed it was fit for use as earphones. However, the Product Mr. Guevara purchased was not fit for use as earphones due to the Product's tendency to overheat and the risk it posed as a fire hazard. Mr. Guevara's belief that the earphones were fit for their intended purpose formed the basis of the bargain, and Mr. Guevara would not have purchased the Product or would have paid significantly less for the Product had he known that the Product was unfit to perform its intended purpose.

5.      The Product that Mr. Guevara purchased began to malfunction shortly after he

purchased it because the Product would overheat during use. The Product that Mr. Guevara purchased does not contain a manufacturer code and is included in the Product Recall.

6. Mr. Guevara reviewed the Product's packaging prior to purchase. Defendant disclosed on the packaging that the Product was an earphone and described features typical of earphones but did not disclose the defect. Had there been a disclosure, Mr. Guevara would not have purchased the Product because the defect would have been material to him, or at the very least, he would have purchased the Product at a substantially reduced price. Mr. Guevara relied on the packaging in making his purchase decision.

7. Mr. Guevara did not submit a claim through the CPSC. The remedy offered by the recall was insufficient because it only provided a replacement, as opposed to a full refund for the defective earphones. Mr. Guevara is also entitled to statutory damages under New York law.

8. Plaintiff suffered economic injury from the Product Defect because he purchased an item that was worth less than what had been represented to him. Plaintiff paid a price premium in the amount of the full purchase price of the Product.

9. Defendant E-Filliate, Inc. is a Delaware corporation with its principal place of business at 11321 White Rock Road, Rancho Cordova, California 95742. Defendant markets, distributes, and sells the Product throughout the United States and the State of New York. Defendant sells the Product directly to consumers through several retail stores, including Lowe's, Home Depot, True Value, Aubuchon Hardware, Orgill, and Mid-States.

## JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 Class Members and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest, fees, and costs, and at least one Class

Member is a citizen of a state different from Defendant.

11. This Court has general personal jurisdiction over Defendant because Plaintiff purchased the Product in this District.

12. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because it is a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred.

## COMMON FACTUAL ALLEGATIONS

**The Overheating Defect**

13. Defendant E-Filliate, Inc. is a manufacturing company that partners with several brand name companies, including DeWALT. Among the various items manufactured and sold by E-Filliate is the Jobsite Wireless Pro Earphone sold under the DeWALT brand, which is the Product at issue here.

14. The Product is primarily sold at retail stores across the country, including Lowe's, Home Depot, True Value, Aubuchon Hardware, Orgill, and Mid-States.

15. The Product was made with a design defect, causing the Product to overheat, posing a significant hazard for burns and fires (hereinafter, the "Product Defect"). The Product Defect was substantially likely to materialize during the useful life of the Product.

16. Over 300,000 units of the Product were sold in the U.S. at approximately $65 each.

17. Upon information and belief, Defendant sold a large number of the Products, and thus profited enormously from their failure to disclose the Product Defect sooner.

18. The Product Defect at issue here involves a critical safety-related component of the Product, and it was unsafe to use the Product with the design defect. Defendant had knowledge of the defect, which was not known to Plaintiff or Class Members.

19. Defendant made partial representations to Plaintiff and Class Members, while suppressing the safety defect. Specifically, by displaying the Product and describing its features,

the product packaging implied that the Product was suitable for use as an earphone, without disclosing that it had a critical safety-related defect that could result in harm to users of the Product.

**The Inadequate Recall Of The Product**

20. In December of 2021, there was a recall of the Product.

21. The recall was due to a serious injury and safety hazard associated with the Product. Specifically, it was admitted that its Product had a defect in design and materials that caused the earphones to overheat. This resulted in numerous reports of burns and fires associated with the defect.

22. The entirety of the recall remedy available to consumers was the ability to contact the Product manufacturer for a replacement, on the condition that the original product be shipped to Defendant. No financial compensation was offered to consumers.

23. The recall allowed Defendant to *say* it was doing right by its customers, but in fact the recall protected Defendant's profits by suppressing returns:

    (a) The recall remedy was grossly insufficient because it in no way compensated consumers for the purchase of a dangerous and defective product.

    (b) Instead of offering cash refunds for the defective Product, Defendant instead merely offered an exchange for a replacement.

    (c) The recall notice was inadequate in notifying consumers of the defect.

    (d) The recall remedy did not provide for statutory damages and other relief owed to consumers.

**Defendant's Pre-Sale Knowledge Of The Defect**

24. Before the recall was issued, Defendant received reports of overheating issues with its DeWALT Jobsite Pro Wireless Earphones.

25. The United States Consumer Products Safety Commission ("CPSC") operates a

website where consumers can post complaints about unsafe products and provide details about any incidents they experienced.

26. Online safety reports to the CPSC show that Defendant knew or should have known of the defect, yet it continued to sell the defective Product anyway. For example, the recall notice posted to the CPSC website provided that "E-filliate has received 61 reports of the earphones overheating during charging or use, including five reports of fire and four reports of minor burn injuries."[1]

27. Per federal regulations, all safety reports that are submitted online through the CPSC website are sent directly to the product's manufacturer and retailers. Defendant also monitored safety complaints from the CPSC, and thus Defendant would have independently become aware of each safety report referenced herein separate and apart from noticed received from the CPSC.

28. Again, Defendant received numerous reports of defects associate with the Products. The unusually high number of reports put Defendant on notice of the Product Defect. The similarity of complaints also would have put Defendant on notice that the complaints were not the result of user error or anomalous incidents, but instead were the result of a systemic problem with the Product.

29. Every time the CPSC's website describes a consumer complaint, the website also discloses the date when CPSC sent that complaint to the manufacturer. This is separate from the portion of the safety complaint where the consumer states whether he or she independently contacted the manufacturer. As alleged above, the above-referenced complaints were sent to

---

[1] CPSC, *E-filliate Recalls DEWALT Wireless Earphones Due to Burn and Fire Hazards*, https://www.cpsc.gov/Recalls/2022/E-filliate-Recalls-DEWALT-Wireless-Earphones-Due-to-Burn-and-Fire-Hazards.

Defendant by the CPSC shortly after being submitted to the CPSC.

30. For each of the following reasons, Defendant's management knew or should have known about the complaints referenced above as soon as they began appearing on the CPSC website:

> (a) Defendant was repeatedly contacted directly by consumers and by the CPSC about the Product Defect.
>
> (b) The CPSC website is a government-run repository for complaints about safety-related defects, and many of Defendant's products appear on the website. The CPSC website can provide businesses with early warnings of product defects, and monitoring reports is easy because users can search for reports by company names. Hence, since at least 2011, it required negligible effort for Defendant's management and other personnel to visit the CPSC website and view a list of reports of safety incidents related to the Product, including reports about the Product Defect at issue here.
>
> (c) Defendant knows about the CPSC's website because it is a high-profile government agency that deals with complaints about a number of products manufactured, distributed, and sold by Defendant, and because Defendant would have been contacted directly each time a consumer complained to the CPSC.
>
> (d) Defendant also knew or should have known about the defect because of the similarity of complaints. The fact that so many customers made similar complaints indicates that the complaints were not the result of user error or anomalous incidents, but instead a systemic problem with the products at issue here. The reports and complaints from consumers also put Defendant on notice that the Products were experiencing unusually high levels of complaints about the Product Defect at issue here, especially when compared to other earphones.

31. Upon information and belief, Defendant received numerous customer complaints before the named Plaintiff here purchased its Product.

32. Defendant also would have had notice of the Product Defect as a result of direct customer complaints and product returns.

33. In short, information from customer returns, complaints directly to Defendant, and information obtained from the CPSC, whether alone or in the aggregate, would have put Defendant

on notice of the defect. Nonetheless, Defendant failed to recall the Product until December 2021, putting innumerable consumers at risk in the meantime.

## CLASS REPRESENTATION ALLEGATIONS

34. Plaintiff seeks to represent a class defined as all persons in the United States who purchased the Product (the "Class"). Excluded from the Class are persons who made such purchases for purpose of resale.

35. Plaintiff also seeks to represent a subclass of all Class Members who purchased the Product in the State of New York (the "New York Subclass") (collectively with the Class, the "Classes").

36. Subject to additional information obtained through further investigation and discovery, the above-described Classes may be modified or narrowed as appropriate, including through the use of multi-state subclasses.

37. At this time, Plaintiff does not know the exact number of members of the aforementioned Class and New York Subclass ("Class Members" and "Subclass Members," respectively). However, given the size of the recall and the number of retail stores in the United States selling the Product, Plaintiff reasonably estimates there are hundreds of thousands of Class Members and tens of thousands of Subclass Members. Therefore, Class and Subclass Members are so numerous that joinder of all members is impracticable.

38. There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Classes that predominate over questions that may affect individual Class Members include:

    (a)    whether the Product suffers from a design defect;

    (b)    whether Defendant misrepresented and/or failed to disclose

     material facts concerning the Product;

  (c) whether Defendant's conduct was unfair and/or deceptive;

  (d) whether Defendant has been unjustly enriched as a result of the unlawful conduct alleged in this Complaint such that it would be inequitable for Defendant to retain the benefits conferred upon Defendant by Plaintiff and the Classes;

  (e) whether Plaintiff and the Classes sustained damages with respect to the common law claims asserted, and if so, the proper measure of their damages.

39. With respect to the New York Subclass, additional questions of law and fact common to the members that predominate over questions that may affect individual members include whether Defendant violated the New York General Business Law § 349 and § 350 by materially omitting the presence of the design defect.

40. Plaintiff's claims are typical of those of the Class because Plaintiff, like all members of the Classes, purchased, in a typical consumer setting, Defendant's Product, and Plaintiff sustained damages from Defendant's wrongful conduct.

41. Plaintiff will fairly and adequately protect the interests of the Classes and has retained counsel that is experienced in litigating complex class actions. Plaintiff has no interests which conflict with those of the Classes.

42. A class action is superior to other available methods for the fair and efficient adjudication of this controversy, especially given the unsatisfactory nature of Defendant's recall.

43. The prosecution of separate actions by members of the Classes would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. For

example, one court might enjoin Defendant from performing the challenged acts, whereas another might not. In addition, individual actions could be dispositive of the interests of the Classes even where certain Class or Subclass Members are not parties to such actions.

## COUNT I
### Violation Of New York General Business Law § 349

44. Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

45. Plaintiff brings this claim individually and on behalf of the members of the proposed New York Subclass against Defendant.

46. New York's General Business Law § 349 prohibits deceptive acts or practices in the conduct of any business, trade, or commerce.

47. In its sale of goods throughout the State of New York, Defendant conducts business and trade within the meaning and intendment of New York's General Business Law § 349.

48. Plaintiff and members of the New York Subclass are consumers who purchased the Products from Defendant for their personal use.

49. By the acts and conduct alleged herein, Defendant engaged in deceptive, unfair, and misleading acts and practices, which include, without limitation, misrepresenting that the Product (i) would not contain a dangerous defect and (ii) is generally recognized as safe for use as an earphone Product. Defendant intentionally concealed and omitted material facts regarding the true nature of the Product, namely that the Product suffered from a design defect causing it to overheat. Defendant had knowledge of the defect from consumer complaints which pre-dated Plaintiff's purchase of the Product, examples of which are set forth above.

50. The foregoing deceptive acts and practices were directed at consumers.

51. The foregoing deceptive acts and practices are misleading in a material way because they fundamentally misrepresent the characteristics and quality of the Product to induce consumers to purchase the same.

52. By reason of this conduct, Defendant engaged in deceptive conduct in violation of New York's General Business Law.

53. Defendant's actions are the direct, foreseeable, and proximate cause of the damages that Plaintiff and members of the New York Subclass have sustained from having paid for and used Defendant's Products.

54. As a result of Defendant's violations, Plaintiff and members of the New York Subclass have suffered damages because: (a) they would not have purchased the Product on the same terms if they knew that the Product had a dangerous defect; (b) they paid a premium price in the amount of the full purchase price of the Product; and (c) the Product does not have the characteristics, uses, benefits, or qualities as promised.

55. On behalf of himself and other members of the New York Subclass, Plaintiff seeks to recover his actual damages or fifty dollars, whichever is greater, three times actual damages, and reasonable attorneys' fees.

## COUNT II
### Violation Of New York General Business Law § 350

56. Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

57. Plaintiff brings this claim individually and on behalf of the members of the proposed New York Subclass against Defendant.

58. By the acts and conduct alleged herein, Defendant engaged in false advertising by misrepresenting that the Product (i) would not contain a dangerous defect and (ii) is generally

recognized as safe for use as an earphone Product. Defendant intentionally concealed and omitted material facts regarding the true nature of the Product, namely that the Product suffered from a design defect causing it to overheat. Defendant had knowledge of the defect from consumer complaints which pre-dated Plaintiff's purchase of the Product, examples of which are set forth above.

59. New York's General Business Law § 350 prohibits false advertising in the conduct of any business, trade, or commerce.

60. Pursuant to said statute, false advertising is defined as "advertising, including labeling, of a commodity … if such advertising is misleading in a material respect."

61. Based on the foregoing, Defendant engaged in consumer-oriented conduct that is deceptive or misleading in a material way which constitutes false advertising in violation of New York's General Business Law § 350.

62. Defendant's false, misleading, and deceptive statements and representations of fact were and are directed towards consumers. Defendant also actively concealed and knowingly admitted material facts regarding the true nature of the Product.

63. Defendant's false, misleading, and deceptive statements and representations of fact and omissions were and are likely to mislead a reasonable consumer acting reasonably under the circumstances.

64. Defendant's false, misleading, and deceptive statements and representations of fact and omissions have resulted in consumer injury or harm to the public interest.

65. As a result of Defendant's false, misleading, and deceptive statements and representations of fact, and omissions, Plaintiff and the New York Subclass have suffered and continue to suffer economic injury.

66. As a result of Defendant's violations, Plaintiff and members of the New York Subclass have suffered damages due to said violations because: (a) they would not have purchased the Product on the same terms if they knew that the Product had a dangerous defect and is not safe for use; (b) they paid a premium price in the amount of the full purchase price of the Product; and (c) the Product does not have the characteristics, uses, benefits, or qualities as promised.

67. On behalf of himself and other members of the New York Subclass, Plaintiff seeks to recover his actual damages or five hundred dollars, whichever is greater, three times actual damages, and reasonable attorneys' fees.

## COUNT III
### Breach of Implied Warranty

68. Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

69. Plaintiff brings this claim individually and on behalf of the members of the proposed Classes against Defendant.

70. Defendant, as the marketer, distributor, and/or seller of the Product, impliedly warranted that the Product (i) would not contain a safety-related defect and (ii) was generally safe for consumer use.

71. Defendant breached the warranty implied in the contract for the sale of the defective Product because it could not pass without objection in the trade under the contract description, the Product was not of fair or average quality within the description, and the Product was unfit for its intended and ordinary purpose because the Product was defective in that it contained a defect that made the Product unreasonably dangerous, and as such is not generally recognized as safe for consumer use. As a result, Plaintiff and Class and Subclass Members did not receive the goods as impliedly warranted by Defendant to be merchantable.

72. In addition, Plaintiff and Class and Subclass Members were harmed because the Product failed almost immediately after Plaintiff and Class and Subclass Members purchased the product, a period far shorter than the implied warranty.

73. Plaintiff and Class and Subclass Members purchased the Product in reliance upon Defendant's skill and judgment and the implied warranties of fitness for the purpose.

74. The Product was not altered by Plaintiff or Class and Subclass Members.

75. The Product was defective when it left the exclusive control of Defendant.

76. Defendant knew that the Product would be purchased and used without additional testing by Plaintiff and Class and Subclass Members.

77. The Product was defectively manufactured and unfit for its intended purpose, and Plaintiff and Class and Subclass Members did not receive the goods as warranted.

78. Privity is not required as to Defendant because the Product contained a dangerous design defect (*i.e.,* the ability of the Product to overheat and pose a fire hazard). As the known end purchaser, Plaintiff is also a third-party beneficiary of the implied warranty of merchantability.

79. As a direct and proximate cause of Defendant's breach of the implied warranty, Plaintiff and Class and Subclass Members have been injured and harmed because: (a) they would not have purchased the Product on the same terms if they knew that the Product contained the Product Defect, making it unsafe for consumer use; and (b) the Product does not have the characteristics, uses, or benefits as promised by Defendant.

### COUNT IV
### Violation Of The Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*

80. Plaintiff incorporates by reference and re-alleges herein all paragraphs alleged above.

81. Plaintiff brings this claim individually and on behalf of the members of the

proposed Classes against Defendant.

82. The Product is a consumer product as defined in 15 U.S.C. § 2301(1).

83. Plaintiff and the Class and Subclass Members are consumers as defined in 15 U.S.C. § 2301(3).

84. Defendant is a supplier and warrantor as defined in 15 U.S.C. § 2301(4) and (5).

85. In connection with the marketing and sale of the Product, Defendant impliedly warranted that the Product was fit for use as earphones. The Product was not fit for use as earphones due to the defect described in the allegations above.

86. By reason of Defendant's breach of warranties, Defendant violated the statutory rights due to Plaintiff and the Class and Subclass Members pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*, thereby damaging Plaintiff and the Class and Subclass Members.

87. Plaintiff and the Class and Subclass Members were injured as a direct and proximate result of Defendant's breach because they would not have purchased the Product if they knew the truth about the defective nature of the Product.

## COUNT V
### Unjust Enrichment

88. Plaintiff incorporates by reference and re-alleges herein all paragraphs alleged above.

89. Plaintiff brings this claim individually and on behalf of the members of the proposed Classes against Defendant.

90. "Although there are numerous permutations of the elements of the unjust enrichment cause of action in the various states, there are few real differences. In all states, the focus of an unjust enrichment claim is whether the defendant was unjustly enriched. At the core

of each state's law are two fundamental elements—the defendant received a benefit from the plaintiff and it would be inequitable for the defendant to retain that benefit without compensating the plaintiff. The focus of the inquiry is the same in each state." *In re Mercedes-Benz Tele Aid Contract Litig.*, 257 F.R.D. 46, 58 (D.N.J. Apr. 24, 2009), quoting *Powers v. Lycoming Engines*, 245 F.R.D. 226, 231 (E.D. Pa. 2007).

91. Plaintiff and Class and Subclass Members conferred a benefit on Defendant by purchasing the Products and by paying a price premium for them.

92. Defendant has knowledge of such benefits.

93. Defendant has been unjustly enriched in retaining the revenues derived from Class Members' purchases of the Product, which retention under these circumstances is unjust and inequitable because Defendant misrepresented that the Product (i) would not contain a dangerous defect and (ii) is generally recognized as safe for use as an earphone Product. This misrepresentation caused injuries to Plaintiff and Class and Subclass Members because they would not have purchased the Product if the true facts regarding the Product were known.

94. Because Defendant's retention of the non-gratuitous benefit conferred on it by Plaintiff and Class and Subclass Members is unjust and inequitable, Defendant must pay restitution to Plaintiff and the Class and Subclass Members for their unjust enrichment, as ordered by the Court.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

    a. For an order certifying the nationwide Class and New York Subclass under Rule 23 of the Federal Rules of Civil Procedure, naming

      Plaintiff as representative of the Class and New York Subclass, and naming Plaintiff's attorneys as Class Counsel to represent the Class and New York Subclass Members;

b.   For an order declaring the Defendant's conduct violates the statutes referenced herein;

c.   For an order finding in favor of Plaintiff, the nationwide Class, and the New York Subclass on all counts asserted herein;

d.   For compensatory and punitive damages in amounts to be determined by the Court and/or jury;

e.   An award of statutory penalties to the extent available;

f.   For pre-judgment interest on all amounts awarded;

g.   For an order of restitution and all other forms of monetary relief;

h.   For an order awarding Plaintiff, the Class, and New York Subclass their reasonable attorneys' fees and expenses and costs of suit.

## DEMAND FOR TRIAL BY JURY

Pursuant to Fed. R. Civ. P. 38(b)(1), Plaintiff demands a trial by jury of all issues so triable.

Dated: May 19, 2022                               Respectfully submitted,

                                                          By:   */s/ Andrew J. Obergfell*
                                                                   Andrew J. Obergfell

                                        **BURSOR & FISHER, P.A.**
                                        Andrew J. Obergfell
                                        888 Seventh Avenue
                                        New York, NY  10019
                                        Telephone: (212) 989-9113
                                        Facsimile: (212) 989-9163
                                        Email: aobergfell@bursor.com

**BURSOR & FISHER, P.A.**
L. Timothy Fisher (*pro hac vice* forthcoming)
1990 N. California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 679-9006
Email: ltfisher@bursor.com

**BURSOR & FISHER, P.A.**
Stephen A. Beck (*pro hac vice* forthcoming)
701 Brickell Ave., Suite 1420
Miami, FL 33131
Telephone: (305) 330-5512
Facsimile: (305) 676-9006
Email: sbeck@bursor.com

*Attorneys for Plaintiff*